UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **37 ASSOCIATES, TRUSTEE FOR THE 37 FORRESTER STREET, SW TRUST**, <br>     Plaintiff, <br><br> v. <br><br> **REO CONSTRUCTION CONSULTANTS, INC.** *et al.*, <br>     Defendants. | Civ. A. No. 04-333 (JMF) |

**MEMORANDUM OPINION**

Currently ripe and ready for resolution is the Motion for Summary Judgment By Defendants/Counter-Plaintiffs, Quinard Thomas and U.S. Bank ("Defs. Mot.").[1] For the reasons stated below, the motion will be granted.

**INTRODUCTION**

This case involves a parcel of property located at 37 Forrester Street, SW in Washington, D.C. ("the Property"). First Amended Complaint to Quiet Title ("Amend. Comp.") ¶ 2. Both plaintiff, 37 Associates, Trustee for 37 Forrester Street, SW Trust ("plaintiff"), and defendants/counter-plaintiffs, REO Construction Consultants, Inc. et al. ("defendants"), claim to be the lawful owners of the property.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

---

[1] Defendant United States concurs in the arguments put forth by defendants/counter-plaintiffs Quinard Thomas and U.S. Bank, N.A. and therefore has not filed a separate motion. Notice Concerning the Summary Judgment Motion Filed By Defendants/Counter-Plaintiffs Quinard Thomas and U.S. Bank, N.A..

appropriate if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A material fact is one that affects the outcome of the litigation. Kalekiristos v. CTF Hotel Mgmt. Corp., 958 F. Supp. 641, 645 (D.D.C. 1997), aff'd 132 F.3d 1481 (D.C. Cir. 1997). There exists a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (citations omitted). To prevail on their motion for summary judgment, defendants must establish that on the basis of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,"[2] no reasonable finder of fact could render a verdict in plaintiff's favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).

## BACKGROUND

I.   Facts

There is no genuine dispute as to the following facts.

Prior to October of 1996, multiple tax liens were assessed against the Property by the District of Columbia due to unpaid taxes. Amend. Comp. ¶ 3. The District of Columbia Department of Finance and Revenue then sold the property to the District of Columbia at a tax sale. Id. ¶ 5. On October 1, 1996, the District of Columbia, in turn, assigned, sold, and transferred its tax lien on the Property to District TLC Trust 1996 ("TLC"). Id. On November 20, 1996, the Tax Lien Certificate, dated October 1, 1996, was recorded with the District of Columbia Department of Finance and Revenue, Recorder of Deeds Division, as Instrument No. 76529. Id.

On May 17, 1999, several individuals, including Sonnie Ellis and Erskine Hartwell, were

---

[2] Fed. R. Civ. P. 56(c).

indicted in the U.S. District Court for the District of Maryland ("Maryland District Court"). Defs. Mot. at Ex. A.  On October 14, 1999, following the commencement of the criminal forfeiture action, the United States filed a Notice of Lis Pendens with the Clerk of the Circuit Court for the District of Columbia. Id. at Ex. B.  The instrument was recorded as No. 9900088525. Id.

On October 21, 1999, TLC filed suit in the Superior Court for the District of Columbia ("Superior Court") to foreclose rights of redemption as to Instrument No. 76529.

On June 29, 2000, the United States filed a motion for a preliminary criminal forfeiture in Maryland District Court as to property belonging to Erskine Hartwell ("Hartwell"), including the parcel at issue in this case. Defs. Mot. at Ex. C.  On August 18, 2000, the United States' motion for a preliminary criminal forfeiture was granted. Defs. Mot. at Ex. D.  On September 13, 2000, the United States published notice of the criminal forfeiture in the Prince George's Journal and the Washington Times. Defs. Mot. at Ex. E.

Two months later, on November 14, 2000, the United States filed a motion for a final order of criminal forfeiture in Maryland District Court. Defs. Mot. at Ex. F.  On January 11, 2001, Maryland District Court ordered that "all rights, title and interests of Erskine Hartwell, and any and all other persons" in the property were forfeited to the United States, pursuant to 28 U.S.C. § 853. Defs. Mot. at Ex. G.

Shortly thereafter, on January 17, 2001, the Superior Court granted TLC's motion for a default judgment to quiet title to the Property.

On February 8, 2002, the United States conveyed the Property to REO Construction Consultants, Inc. ("REO") Defs. Mot. at Ex. H.  The deed, dated February 8, 2002, was recorded on April 11, 2002 as Instrument No. 42065. Id.  On March 2, 2002, Quinard Thomas ("Thomas")

entered into a sales contract with REO to purchase the Property for a total of $130,000.000. Defs. Mot. at Ex. I. In order to purchase the Property, Thomas secured a loan from SIB Mortgage Corp. ("SIB") in the amount of $115,700.00. Id.

On May 14, 2002, TLC executed an assignment of tax lien interest, assigning its interest to plaintiff in liens of $3,108.95 and $2,829.05. Amend. Comp. at Ex. B.

On June 27, 2002, Thomas and REO settled on the Property. Defs. Mot. at Ex. I. On the same day, Thomas executed a Deed of Trust for the benefit of SIB, securing the repayment of his loan for $115,700.00. Id. On July 31, 2002, both Thomas' deed and SIB's deed were recorded with the Land Records of the Recorder of Deeds of the District of Columbia. Id. Thomas' deed was recorded as Instrument No. 88868 and SIB's deed was recorded as Instrument No. 88869. Id.

On March 12, 2003, the District of Columbia granted a tax deed to plaintiff. The tax deed was recorded on April 28, 2003 as Instrument Number 050183. Id. Ex. C.

On June 1, 2003, SIB assigned its Deed of Trust to U.S. Bank. On October 15, 2003, U.S. Bank recorded its Deed of Trust as Instrument No. 2003135311. Defs. Mot. at Ex. J.

II.     Criminal Forfeiture Proceedings

The forfeiture proceedings at issue in this case were conducted pursuant to 21 U.S.C. § 853,[3] the federal statute which authorizes the government's seizure of a criminal defendant's assets to the extent that those assets were derived from criminal narcotics activity. 21 U.S.C. § 853(a). Following the court's acceptance of a plea or if the defendant is convicted, the court enters a preliminary order of forfeiture. In re Am. Basketball League, Inc., 317 B.R. 121, 126

---

[3] All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

(Bankr. N.D. Cal. 2004). At this first stage of the forfeiture proceedings, the defendant's interest in the property is extinguished. Id. The second stage is known as the ancillary proceedings. Id. At this stage, innocent third parties who may have an interest in the property are afforded the opportunity to have the validity of their claims resolved by the court. Id. Following the conclusion of the ancillary proceedings, the government's interest in the property is perfected. Id.

III.     The Parties' Positions

Defendants make two arguments in support of their motion. First, defendants argue that summary judgment is appropriate because plaintiff's suit is an improper collateral attack on the Final Order of Forfeiture issued by the Maryland District Court. Defs. Mot. at 2. Second, defendants argue that the court should quiet title in their favor because under the D.C. Code, they are bona fide purchasers for value with superior title to the Property. Id.

Plaintiff counters by challenging the validity of the Maryland District Court's Final Order of Forfeiture, arguing that Hartwell, the individual who was the subject of the criminal prosecution, was not in fact the owner of the forfeited property at the time it was seized. Plains. Opp. at 4. Rather, plaintiff contends that the Property's true owner was Quispehuaman and that the Final Order of Forfeiture is, therefore, void. Id.

## DISCUSSION

I.     Plaintiff's Suit to Quiet Title

    A.     Plaintiff's Claim is an Improper Collateral Attack on the Judgment of Forfeiture

As noted above, on May 17, 1999, indictments were handed down against several individuals in Maryland District Court. In conjunction with the prosecution of the criminal case in Maryland, the United States also filed a Notice of Lis Pendens in the District of Columbia.

The Notice, dated October 4, 1999, indicated that the United States was also pursuing the forfeiture of certain property pursuant to 21 U.S.C. § 853, upon the theory that it was connected to criminal activity. Defs. Mot. at Ex. B.  The Notice further indicated that the United States sought to have the Clerk of the Court "index this notice of pendency against the real property and the names described herein," which were identified as "Sonnie Ellis, a/k/a Joseph Baye, a/k/a Sony Baye, Erskine Hartwell, a/k/a Pee Wee, and Daniel Quispehuaman, and any other persons alleging any interest in the property." Id.

On June 29, 2000, the United States filed a Motion for Preliminary Forfeiture Order in Maryland District Court. Defs. Mot. at Ex. C.  In support of its motion, the United States indicated that defendant Erskine Hartwell had pled guilty to conspiracy to distribute narcotics and that, pursuant to the plea agreement, Hartwell agreed to forfeit $500,000 as well as two parcels of land, one of the parcels being the property located at 37 Forrester Street, SW, in Washington, D.C. Id.  On August 18, 2000, the court granted the government's motion and ordered the United States Attorney's Office to publish the order as required by 21 U.S.C. § 853. Defs. Mot. at Ex. D.

On September 13, 2000, pursuant to the court's Preliminary Forfeiture Order, the United States executed service as to the notice of criminal forfeiture via publication in the Washington Times and the Prince George's Journal. Defs. Mot. at Ex. E

On January 11, 2001, the Maryland District Court entered final judgment.  Acting in rem, the court's order granted all right, title, and interest in the property in the United States, thereby forfeiting to the United States "all rights, titles, and interests of Erskine Hartwell and any and all other persons." Defs Mot. at  Exhibit G.  Thus, the title conveyed was and is good against all the

world, whether they participated in the forfeiture action or not.  As then Judge Holmes explained:

> A judgment in rem is an act of the sovereign power; and, as such, its effect cannot be disputed, at least within the jurisdiction. If a competent court declares a vessel forfeited, or orders it sold free from all claims, or divorces a couple, or establishes a will under statutes like our Pub.St. c. 127, § 7, a paramount title is passed, the couple is divorced, the will is established as against all the world, whether parties or not, because the sovereign has said that it shall be so.

Brigham v. Fayerweather, 140 Mass. 411, 413 (Mass. Sup. Ct. 1886).  Such an action in rem is not subject to collateral attack in any other court. Christianson v. County of King, 239 U.S. 356, 372 (1915); Roberts v. United States, 141 F.3d 1468, 1471 (11th Cir. 1998) (plaintiff may not collaterally attack the injunctions issued by the court in the criminal forfeiture case by filing a separate civil suit): Engebretson v. West, 111 F.2d 528, 532 (8th Cir. 1940), cert. denied 311 U.S. 663 (1940); In re Am. Basketball League, Inc., 317 B.R. 121, 127 (Bankr. N.D. Cal. 2004) ("As a final judgment concluding the proceedings before the district court, the final order of forfeiture is entitled to full faith and credit in this court.  Final orders, of forfeiture or other relief, are not subject to collateral attack."); McCorkle v. Comm'r of Internal Revenue, 124 T.C. 56, 65-66 (U.S. Tax Ct. 2005) (the petitioner could not collaterally attack the District Court's forfeiture order in the U.S. Tax Court).

     Plaintiff seeks relief in this court from the decision previously rendered by the Maryland District Court.  Indeed, as noted above, plaintiff asks this court to declare the order of the Maryland court void and also seeks a determination that it holds the fee interest in the property even though the Maryland District Court has ordered that the United States has the fee interest.  Such an effort is an express collateral attack on the judgment of that court.  As explained by the

court in In re Am. Basketball League, Inc.:

> Unlike a direct appeal, a collateral attack questions the validity of a judgment or order in a separate proceeding that is not intended to obtain relief from the judgment. 18 Moore's Federal Practice, § 131.02[2]. It seeks, through the second suit, to avoid or evade the earlier judgment, or to deny its force and effect. Even where the second action has an independent purpose and contemplates some other relief, it is a collateral attack if, in some fashion, it would overrule a previous judgment.

In re Am. Basketball League, Inc., 317 B.R. at 128.

    B.    Criminal Forfeiture Proceedings Provide the Exclusive Forum for Adjudicating the Validity of a Third-Party's Interest in Forfeited Property

Plaintiff's claims in the property, now forfeited to the United States, may only be adjudicated pursuant to the procedures established in 21 U.S.C. § 853 that makes the court where forfeiture is sought the exclusive forum for their resolution.

The pertinent sections of the statute provides:

> Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may - - (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

21 U.S.C. § 853(k).  "By making ancillary proceedings the exclusive forum for protecting third party interests, the legislature has carefully balanced the need to provide all potential third party claimants with an opportunity to contest the forfeiture against the government's need for certainty of title before it liquidates forfeited property." In re Am. Basketball League, Inc., 317 B.R. at 129.  Accord United States v. Phillips, 185 F.3d 183, 186 (4th Cir. 1999); United States

v. Reckmeyer, 836 F.2d 200, 203 (4th Cir. 1987); United States v. Gordon, No. 03-cr-1494, 2005 WL 2759845, at *2 (S.D.N.Y. Oct. 19, 2005); McCorkle v. Comm'r of Internal Revenue, 124 T.C. at 66 (if IRS sought to challenge forfeiture order, it would have had to file a third party petition with the Florida District Court under 21 U.S.C. § 853(c)).[4]

    II.    Defendants' Suit to Quiet Title

In addition to arguing that plaintiff's suit is an impermissible collateral attack on the Final Order of Forfeiture entered by the Maryland District Court, defendants also seek to quiet title to the Property. In light of the court's determination that plaintiff's suit is an improper collateral attack on the Maryland District Court's Final Order of Forfeiture, and because I believe that the Order of the Maryland District Court requires it, I will quiet title in defendants' favor. Defendants' counsel shall submit a proposed order, quieting title, consistent with this opinion and the Order of the Maryland District Court for my signature within ten days of the issuance of this Opinion.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated:

---

[4] For the possibility of relief for plaintiff in the United States District Court for the District of Maryland, pursuant to Fed. R. Civ. P. 60(b), see United States v. Puig, 419 F.3d 700, 702 (8th Cir. 2005); United States v. Bouler, 927 F.Supp. 911, 916 (W.D.N.C. 1996); United States v. Estevez, 845 F.2d 1409, 1411 (7th Cir. 1988).